SLIP OP. 99-107

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| ———————————————— | : | |
| UNITED STATES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | **Before: WALLACH, Judge** |
| v. | : | **Court No.: 97-04-00678** |
| | : | |
| | : | |
| TRI-STATE HOSPITAL SUPPLY CORP., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| ———————————————— | : | |

[Defendant's  Motion In Limine Denied]

Decided:  October 8, 1999

Akin, Gump, Strauss, Hauer & Feld, L.L.P. (John M. Dowd and Joseph P. Esposito, P.C.) for Plaintiff.

David Ogden, Acting Assistant Attorney General; David M. Cohen, Director; U.S. Department of Justice, Civil Division, Commercial Litigation Branch (Michele D. Lynch and Lucius B. Lau); A. David Lafer, Senior Trial Attorney, for Defendant.

## OPINION

## I

## INTRODUCTION

This case comes before the Court on Plaintiff's Motion In Limine, which requests a pre-trial ruling that allegedly false statements made by Defendant to the United States Customs Service ("Customs") are "material" pursuant to 19 U.S.C. § 1592(a) as a matter of law.  For the reasons stated below, the Court finds that the materiality of Defendant's allegedly false statements is a  mixed question of law and fact which should be placed before a civil jury.  Accordingly, the Court denies Plaintiff's Motion In Limine.

## II

## BACKGROUND


According to Plaintiff, from April 1990 through March 1994, Defendant, Tri-State Hospital Supply Corporation, imported assorted surgical instruments from Pakistan by means of false representations and omissions that caused the purchase prices of these instruments to be overstated.  Plaintiff's Compl. ¶¶ 5, 7.  Although these alleged overstatements and omissions did not deprive the United States of revenues (and, indeed, the merchandise at issue qualified for duty-free treatment under the Generalized System of Preferences ("GSP")), Plaintiff alleges that these representations were "material" for purposes of 19 U.S.C. § 1592 insofar as they (a) had the potential to affect the appraisement of the merchandise that was imported; (b) had the potential to affect Pakistan's continuing eligibility for GSP preferred status; and (c) prevented the compilation of accurate trade statistics by Customs and the U.S. Department of Commerce. Compl. ¶ 9.  Accordingly, Plaintiff has charged Defendant with having committed negligent, grossly negligent, and fraudulent violations of 19 U.S.C. § 1592(a),[1] for which Defendant is potentially liable for civil penalties.  A jury trial on Defendant's liability is scheduled to begin in this Court on October 12, 1999.

---

[1] In relevant part, 19 U.S.C. § 1592(a)(1) (1994), entitled "General rule," provides as follows:

> Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty, tax, or fee thereby, no person, by fraud, gross negligence, or negligence -
> (A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of -
> > (i) any document or electronically transmitted data or information, written or oral statement, or act which is <u>material</u> and false, or
> > (ii) any omission which is <u>material</u>

(emphasis added).

On June 28, 1999, Plaintiff submitted its Motion In Limine,[2] seeking a ruling that Defendant's allegedly false representations to Customs are "material" as a matter of law under 19 U.S.C. § 1592(a)(1).[3] It is this Motion which is before the Court.

_____

[2] Motion In Limine Seeking A Ruling That Defendant's False Statements Are Material Under 19 U.S.C. § 1592 As A Matter Of Law ("Motion In Limine").

[3] Throughout its Motion In Limine, Plaintiff cites to various depositions from expert witnesses to demonstrate how Defendant's alleged overvaluations either directly affected, or could have affected, Customs' appraisement of Defendant's goods, its collection of accurate statistics, and its administration of the GSP program. See, e.g., Motion In Limine at 6 (citing the Deposition of Jerome Greenwell, a survey statistician with the Bureau of the Census, to confirm the significance attached to the collection of accurate trade statistics). To the degree that Plaintiff has introduced such factual elements for the purpose of demonstrating that there is no material fact that would preclude it from being entitled to judgment as a matter of law, the Court views it as ineffective in the present procedural posture of this case.

USCIT R. 56(c) provides that "[a] motion for summary judgment may not be filed by any party, except by order of the court upon motion, (1) after the action has been set for trial, or . . . (3) after the filing of his response to a motion for summary judgment by an adverse party." On October 8, 1997, this Court entered an Order setting the close of discovery for October 27, 1998, and stating that the need for dispositive motions would be considered thereafter. On May 29, 1998, Defendant filed its Motion For Summary Judgment and, in accordance with the Court's Order of June 29, 1998, Plaintiff filed its Response to Tri-State's Motion For Summary Judgment and its Cross-Motion For Summary Judgment on July 29, 1998. Through its Order of May 10, 1999, the Court denied these motions (finding that there were genuine issues of material fact in dispute) and set trial in this matter to begin on October 12, 1999.

Accordingly, the appropriate time for Plaintiff to have made a motion for partial summary judgment on the issue of materiality (regardless of whether the Court or a jury is the proper fact-finder) would have been, at latest, July 29, 1998, the date on which it submitted its Response, and not after the Court's Order of May 10, 1999, setting trial in this case. A motion in limine, which is defined as "[a] pretrial motion requesting court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to moving party that curative instructions cannot prevent predispositional effect on jury," Black's Legal Dictionary 1013 (6th ed. 1990), is not the proper vehicle for such dispositive arguments.

Thus, in considering Plaintiff's Motion In Limine, the Court cannot, and does not, consider whether the Plaintiff is entitled to partial summary judgment on the issue of materiality based on the facts brought forth in its supporting affidavits. Should Plaintiff believe that it is entitled to judgment as a matter of law on the issue of materiality, it may make an appropriate motion under USCIT R. 50(a) once Defendant has been fully heard on the issue at trial.

## III

## ANALYSIS

### A

### United States v. Gaudin Requires a Reexamination of How This Court Treats Materiality Under 19 U.S.C. § 1592(a)(1).

At first glance, the question of whether materiality under 19 U.S.C. § 1592(a)(1) is a question of law for the Court, or a question of fact for a jury in the forthcoming trial on Defendant's liability, appears well-settled.  As Plaintiff observes, this Court has repeatedly stated that the issue of materiality under 19 U.S.C. § 1592(a)(1) is an issue of law to be decided by the Court.  See United States v. Rockwell Int'l Corp., 10 CIT 38, 42, 628 F. Supp. 206, 209-10 (1986); United States v. Daewoo Int'l (America) Corp., 12 CIT 889, 895, 696 F. Supp. 1534, 1540 (1988), modified 13 CIT 76, 704 F. Supp. 1067 (1988); United States v. Modes, 16 CIT 879, 884, 804 F. Supp. 360, 365 (1992); United States v. Menard, 16 CIT 410, 417, 795 F. Supp. 1182, 1188 (1992); United States v. Hitachi America, Ltd., 964 F. Supp. 344, 360 (CIT 1997), aff'd in part and rev'd in part, 172 F.3d 1319 (Fed. Cir. 1999); United States v. Pentax Corp., 1999 WL 767809 at *1 (CIT).  Cf. United States v. Almany, 1998 WL 299345 at *3 (CIT) (granting summary judgment without characterizing materiality as a question for the trier of fact).

Defendant, however, challenges the continuing reliability of these cases, arguing, inter alia, that they simply cite, without any analysis, United States v. Rockwell Int'l Corp., supra.  According to Defendant, the foundation underlying Rockwell has been undermined by the Supreme Court's opinion in United States v. Gaudin, 515 U.S. 506 (1995), which expressly repudiated the decision upon which Rockwell's holding was based, Sinclair v. United States, 279

U.S. 263 (1929). Defendant's Response[4] at 11. Thus, Defendant argues, because this Court's

precedents "are based on a case since repudiated by the Supreme Court, it would be appropriate

for this Court to accord them little if any weight and instead to reexamine the materiality issue."

Id.

Although this Court is not bound by Rockwell and its progeny, Algoma Steel Corp. v.

United States, 865 F.2d 240, 243 (Fed. Cir. 1989), they are persuasive authority on the issue of

whether materiality is, in the first instance, a question for the Court or the jury.[5]  Cf. Krupp Stahl

A.G. v. United States, 15 CIT 169, 173 (1991) ("[A]bsent unusual or exceptional circumstances,

it would appear to be better practice for judges of this court to follow the prior opinions of this

court.").  In this case, however, the Court finds that, because the underlying authority and

rationale of these cases has been vitiated, it must begin its analysis anew.

The precedent here at issue stems directly from Rockwell.[6]  In Rockwell, 10 CIT at 42,

---

[4] Defendant Tri-State Hospital Supply Corporation's Opposition To Plaintiff's Motion In Limine Seeking To Exclude All Evidence On The Issue Of Materiality And To Obtain A Ruling That Tri-State's Statements Are Material As A Matter Of Law ("Defendant's Response").

[5] The various cases cited above (Rockwell, Modes, Daewoo, Hitachi, Menard and Pentax) do not hold that the issue of materiality was a question of law because the government had met the proper standard for summary judgment.  Rather, these cases all stand for the proposition that materiality under 19 U.S.C. § 1592(a)(1) is an issue which, in all instances, should be decided by the Court.  The Court notes, however, that to the degree these cases either did not involve, or would not have involved, jury trials, language characterizing the question of materiality as one of law for the Court to decide is merely dicta.

[6] The Court's cases which observe that materiality is a question of law either cite Rockwell directly for this proposition or cite cases which, in turn, cite Rockwell.  See, Daewoo, 12 CIT at 895, 696 F. Supp. at 1540 (citing Rockwell for the proposition that "[i]nitially, the question of materiality is one of law"); Modes, 16 CIT at 884, 804 F. Supp. at 365 (citing Rockwell and Daewoo); Menard, 16 CIT at 417, 795 F. Supp. at 1188 (citing Rockwell); Hitachi, 964 F. Supp. at 360 (noting without citation that "[s]everal cases have held that the issue of materiality is a matter for the Court" and subsequently citing Rockwell and Menard for standards

628 F. Supp. at 209-10, the Court stated that "[a] question of materiality involves a legal issue to be decided by the Court," and cited as authority for this proposition <u>Sinclair v. United States</u>, 279 U.S. 263, 298-99 (1929), and <u>United States v. Ackerman</u>, 704 F.2d 1344, 1347, <u>reh'g denied</u> 719 F.2d 1282 (5th Cir. 1983). In <u>Sinclair</u>, an appeal of a criminal conviction for "refus[ing] to answer any question pertinent to the question under inquiry" before Congress, the Supreme Court stated:

> The question of pertinency . . . was rightly decided by the court as one of law. It did not depend upon the probative value of evidence. That question may be likened to those concerning relevancy at the trial of issues in court, and it is not essentially different from the question as to materiality of false testimony charged as perjury in prosecutions for that crime. Upon reasons so well known that their repetition is unnecessary it is uniformly held that relevancy is a question of law. And the materiality of what is falsely sworn, when an element in the crime of perjury, is one for the court. . . . It would be incongruous and contrary to well-established principles to leave the determination of such a matter to a jury.

<u>Sinclair</u>, 279 U.S. at 298-99 (citations omitted).

Similarly, in <u>Ackerman</u>, a Fifth Circuit opinion construing a criminal counterpart to 19 U.S.C. § 1592, 18 U.S.C. § 542 (importation of merchandise by means of false or fraudulent representation), the appellate court stated:

> We hold, however, that the materiality requirement of § 542 involves a legal issue

concerning the "measurement of materiality" of a false statement); <u>Pentax</u>, 1999 WL 767809 at *1 (citing <u>Rockwell</u> and stating that "[t]he question of materiality is a legal issue to be decided by the court"). None of these cases contain a separate discussion of the reasons why materiality should or should not be treated as a legal question, nor do they cite to any authority besides <u>Rockwell</u> or each other.

This Court's reviewing Court, the Court of Appeals For The Federal Circuit, has not yet addressed this issue in an opinion that may be cited as precedent.

to be decided by the court. This interpretation of the statute conforms to that given to 18 U.S.C. § 1001, which proscribes the making of false statements to government agencies. As with § 542, the courts have read a requirement of materiality into § 1001 . . . . Under § 1001, "[t]he materiality of a statement rests upon a factual evidentiary showing but the ultimate decision is a legal one." United States v. Beer, 518 F.2d 168, 172 (5th Cir. 1975). Likewise, under § 542, the ultimate decision as to whether a false statement is material is a legal rather than a factual issue.

Ackerman, 704 F.2d at 1347-48.

In United States v. Gaudin, the Supreme Court explicitly repudiated Sinclair's logic. In Gaudin, 515 U.S. at 511-23, the Court found that, in a prosecution under 18 U.S.C. § 1001,[7] the question of the materiality of the false statements had to be submitted to the jury for resolution. In so holding, the Court reconciled its decision with Sinclair by noting that, to the degree the logic of Sinclair had not already been overruled, "we repudiate [it] now." Id. at 520. The Court noted:

> [Sinclair] said that the question of pertinency "may be likened to those concerning relevancy at the trial of issues in court," which "is uniformly held [to be] a question of law" for the court. 279 U.S., at 298, 49 S.Ct., at 273. But how relevancy is treated for purposes of determining the admissibility of evidence says nothing about how relevancy should be treated when (like "pertinence" or

---

[7] 18 U.S.C. § 1001 (1994) provides:

[W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully -
     (1)  falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
     (2) makes any materially false, fictitious, or fraudulent statements or representation; or
     (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title or imprisoned not more than 5 years, or both.

"materiality") it is made an element of a criminal offense.  It is commonplace for the same mixed question of law and fact to be assigned to the court for one purpose, and to the jury for another. . . .

That leaves as the sole prop for Sinclair its reliance upon the unexamined proposition, never before endorsed by this Court, that materiality in perjury cases (which is analogous to pertinence in contempt cases) is a question of law for the judge.  But just as there is nothing to support Sinclair except that proposition, there is, as we have seen, nothing to support that proposition except Sinclair. While this perfect circularity has a certain esthetic appeal, it has no logic.

Id. at 520-21.

Thus, one leg of this Court's "materiality" analysis in Rockwell -- based, as it is, on Sinclair -- is eliminated.

Ackerman, the other leg of Rockwell, has become an equally questionable proposition in light of Gaudin.  As noted above, the Fifth Circuit supported its holding in Ackerman (that materiality in a 18 U.S.C. § 542 prosecution was a legal issue to be decided by the Court) by drawing an analogy to 18 U.S.C. § 1001.[8]  Gaudin, however, discredited the analogy by holding that the materiality requirement of 18 U.S.C. § 1001 is a mixed question of law and fact which the Constitution requires juries, and not the Court, to decide.  Thus, Gaudin casts significant doubt upon the continuing validity of the Fifth Circuit's materiality determination in Ackerman and, accordingly, further undermines Rockwell.[9]

---

[8] Specifically, Ackerman stated that "[w]e hold, however, that the materiality requirement of § 542 involves a legal issue to be decided by the court.  This interpretation of the statute conforms to that given to 18 U.S.C. § 1001, which proscribes the making of false statements to government agencies."  Ackerman, 704 F.2d at 1347.

[9] The continuing validity of the Fifth Circuit's interpretation of 18 U.S.C. § 542 (importation of merchandise by means of false or fraudulent representation) in Ackerman is further put in doubt by the broad treatment Gaudin has received in some courts.  See, e.g., United States v. Uchimura, 125 F.3d 1282, 1284 (9th Cir. 1997) ("Indeed, the Supreme Court's

Accordingly, a reexamination is necessary. While this Court has treated the issue of materiality under 19 U.S.C. § 1592(a)(1) as a legal matter to be decided solely by the Court, the basis for this rule has been substantially undermined. Thus, in order for the Court to properly decide Plaintiff's Motion In Limine, it is necessary to examine anew how materiality should be treated under 19 U.S.C. § 1592(a)(1).

**B**

**The Supreme Court Has Said That Mixed Questions of Fact and Law, Such as the Question of Materiality under 19 U.S.C. § 1592(a)(1), Should Typically Be Decided by Juries.**

Gaudin offers considerable guidance on whether this Court should continue to treat materiality as a question of law. That case reviewed the issue of materiality in the context of a criminal ordinance, and its holding was based largely on the Court's interpretation of the "due process" clause of the Fifth Amendment and the Sixth Amendment's guarantee of a "speedy and public trial, by an impartial jury" in "all criminal prosecutions." Id. at 509-10. These provisions, of course, are of limited relevance in the context of a civil jury trial.

Nevertheless, Gaudin's general analysis of mixed questions of law and fact provides this Court with significant analytical assistance in deciding Plaintiff's Motion In Limine. In Gaudin, the Court reflected that:

reasoning [in Gaudin] applies with equal potency to every crime of which materiality is an element. Accordingly, in every post-Gaudin perjury-type case where we have reached the issue this Court has ruled that materiality, if an element, must be submitted to the jury.").

> Deciding whether a statement is "material" requires the determination of at least two subsidiary questions of purely historical fact: (a) "what statement was made?" and (b) "what decision was the agency trying to make?" The ultimate question: (c) "whether the statement was material to the decision," requires applying the legal standard of materiality . . . to these historical facts. What the Government apparently argues is that the Constitution requires only that (a) and (b) be determined by the jury, and that (c) may be determined by the judge. We see two difficulties with this. First, the application-of-legal-standard-to-fact sort of question posed by (c), commonly called a "mixed question of law and fact," has typically been resolved by juries. See J. Thayer, Preliminary Treatise on Evidence at Common Law 194, 249-250 (1898). Indeed, our cases have recognized in other contexts that the materiality inquiry, involving as it does "delicate assessments of the inferences a 'reasonable [decisionmaker]' would draw from a given set of facts and the significance of those inferences to him ... [is] peculiarly on[e] for the trier of fact." TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976) (securities fraud); McLanahan v. Universal Ins. Co., 26 U.S. (1 Pet.) 170, 188-189, 191, 7 L.Ed. 98 (1828) (materiality of false statements in insurance applications).

Gaudin, 515 U.S. at 512.


In this case, a trier of fact (either the Court or the jury) will need to engage in substantially the same "application-of-legal-standard-to-fact" analysis. After first answering the underlying factual queries of (a) "what statement was made?" and (b) "what decision was [Customs] trying to make?," id., the decison-maker will be called upon to apply these facts to the legal standards for materiality. In so doing, the trier of fact will need to make a "delicate assessments of the inferences" that a reasonable agency decision-maker would have drawn from the representations Defendant made in its Customs' entry forms, and evaluate "the significance of those inferences to him" in order to determine whether Defendant's representations met the legal standard for materiality; i.e., whether Defendant's representations had "'a natural tendency to influence, or [were] capable of influencing, the decision of [Customs] in making a determination required to be made,'" Daewoo, 12 CIT at 894, 696 F. Supp. at 1540 (quoting Rockwell, 10 CIT at 42, 628 F. Supp. at 210). This is precisely the type of mixed question of fact and law that the

Supreme Court identified as having "typically been resolved by juries."  Gaudin, 515 U.S. at 512.

Despite the apparent applicability of the Supreme Court's analysis in Gaudin to the facts at bar, Plaintiff argues that Gaudin is not relevant to civil cases, citing, inter alia, the Court's statement that "the courts' power to resolve mixed-law-and-fact questions in civil cases is not at issue here; civil and criminal juries' required roles are obviously not identical, or else there could be no directed verdicts for civil plaintiffs."  Motion In Limine at 7-8 (citing Gaudin, 515 U.S. at 516-17).

In recognizing in Gaudin that such mixed-questions have typically been resolved by juries, the Supreme Court cited two of its prior cases, TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438 (1976) (civil securities fraud) and McLanahan v. Universal Life Insurance Co., 26 U.S. (1 Pet.) 170, 188-89 (1828) (materiality of false statements in insurance application), in both of which it stated that the question of materiality was appropriately placed before civil juries.  See TSC Industries, 426 U.S. at 450 ("[T]he underlying objective facts, which will often be free from dispute, are merely the starting point for the ultimate determination of materiality.  The determination requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact.") (emphasis added); McLanahan, 26 U.S. (1 Pet.) at 188-89 ("The material ingredients of all such inquiries, are mixed up with nautical skill, information, and experience; and are to be ascertained in part, upon the testimony of maritime persons, and are in no sense judicially cognizable as matter of law.").  The Court's citation of these civil cases as support for placing this mixed question issue before juries demonstrates no fixed intention to limit Gaudin's analysis to the criminal context.  Rather, while the Court properly limited its holding to cases before criminal juries, it clearly used an analysis which is

applicable in both contexts.

What meaning, then, should be attributed to the language in <u>Gaudin</u>, <u>id.</u> at 516-17, that "the courts' power to resolve mixed-law-and-fact questions in civil cases is not at issue here; civil and criminal juries' required roles are obviously not identical, or else there could be no directed verdicts for civil plaintiffs"?

The Court made this statement in distinguishing <u>Power v. Price</u>, 16 Wend. 450 (N.Y. 1836), a New York state civil case in which the Court of Appeals directed a verdict in favor of the plaintiff on the issue of materiality. <u>See</u> <u>Power</u>, 16 Wend. at 456. (holding that the trial court "was clearly right in instructing the jury that the testimony given on the former trial was proved to be material," since "it merely decided a question of law, arising upon the proof of facts as to which there was no dispute or contrariety of testimony."). The Court's dicta reflects that a question of law (where no material fact is disputed) in the civil context may not similarly be considered a question of law in a criminal case, no matter how conclusive the prosecution's evidence. <u>United Brotherhood of Carpenters & Joiners of America v. United States</u>, 330 U.S. 395, 408 (1947); <u>United States v. Hayward</u>, 420 F.2d 142, 144 (D.C. Cir. 1969).[10]

To read anything more into the <u>Gaudin</u> Court's language distinguishing between civil and criminal cases, as Plaintiff proposes and as some Courts appear to have done,[11] would mean

---

[10] To let a trial court "decide that all elements, or that a single element, of the crime exist would improperly invade the province of the jury, which in fact if not in theory has the power to disregard the applicable law given it by the court by finding, in favor of the defendant, that an element does not exist even when it knows very well that it does exist." Wayne R. LaFave and Austin W. Scott, Jr., <u>Criminal Law</u> § 1.8(g), at 59 (2nd ed. 1986) (footnotes omitted).

[11] Some courts have interpreted the language in the manner proposed by Plaintiff and have found the high Court's statements concerning materiality and mixed questions of law and

Gaudin was internally inconsistent.  The notion posits that the Supreme Court expressly found its

analysis inapplicable to civil cases, but then specifically relied on two civil cases to support its

holding.  No fair reading of Gaudin would show such an intent by the Court.


Finally, and in further support of its argument that the question of materiality in civil

cases is reserved to the Court, Plaintiff cites to the Supreme Court's 1988 decision in Kungys v.

United States, 485 U.S. 759.  In Kungys, the Supreme Court considered, inter alia, whether

materiality under 8 U.S.C. § 1451(a) (revocation of naturalization for concealment of a material

fact) was "an issue of law, which we may decide for ourselves, or one of fact, which must be

decided by the trial court."  Kungys, 485 U.S. at 772.  Quoting Sinclair v. United States, as well

as a Sixth Circuit opinion interpreting 18 U.S.C. § 1001, the Court held that the "'materiality of

what is falsely sworn, when an element in the crime of perjury, is one for the court.'"  Id. (quoting

Sinclair, 279 U.S. at 298).


Plaintiff argues that, by not overturning Kungys in Gaudin, the Supreme Court meant to

draw a distinction between how the issue of materiality is handled in civil cases (an issue for the

courts) and how it is handled in criminal cases (an issue for juries).  See Motion In Limine at 8-9;

Plaintiff's Reply To Defendant's Opposition To Plaintiff's Motion In Limine ("Plaintiff's Reply")

at 7-8.  That interpretation asks too much of a denaturalization case.  In Kungys, the defendant

---

fact applicable only to criminal prosecutions.  See, e.g., United States v. Board of Trustees of the
University of Alabama, 104 F.3d 1453, 1460 (4th Cir. 1997) (holding Gaudin inapplicable to
claims involving the civil False Claims Act and noting that "the determination of materiality,
although partaking of the character of a mixed question of fact and law, is one for the court");
U.S. ex rel. Lamers v. City of Green Bay, 998 F. Supp. 971, 992 n.11 (E.D. Wis. 1998) (noting
that "the [Gaudin] Court premised its analysis on a criminal defendant's Fifth and Sixth
Amendment rights to a jury determination of guilt on each criminal element, and expressly
declined to extend its holding to the civil context").  To the degree this Court's holding conflicts
with these cases, this Court declines to follow them.

had no right to a jury trial, and the trial court had already made a determination that the

defendant's representations were "material." Thus, Kungys presented the question of whether the

Supreme Court or the trial court should determine the materiality of the statements at issue, in

light of the correct legal standards. This is much different than the question in TSC Industries,

McLanahan, and Gaudin, which was whether a trial judge or a jury should decide the issue of

materiality in the first instance. Indeed, the Supreme Court's analysis in Gaudin appears to

distinguish Kungys on its facts:

> It is hard to imagine questions more diverse than, on the one hand, whether an
> appellate court must remand to a district court for a determination of materiality in
> a denaturalization proceeding (Kungys) and, on the other hand, whether the
> Constitution requires the finding of the element of materiality in a criminal
> prosecution to be made by the jury (the present case). It can be argued that
> Kungys itself did not heed this advice, since it relied upon both our prior decision
> in Sinclair, and a decision of the United States Court of Appeals for the Sixth
> Circuit holding that materiality in a § 1001 prosecution is a question of " 'law' "
> for the court. But the result in Kungys could be thought to follow a fortiori from
> the quite different cases of Sinclair and Abadi, whereas nonentitlement under the
> Sixth Amendment to a jury determination cannot possibly be thought to follow a
> fortiori from Kungys.

Gaudin, 515 U.S. at 522 (citations omitted).

Although the current case does not involve a criminal defendant's Sixth Amendment

rights, as does Gaudin, it does involve a factual situation which is more analogous to TSC

Industries, McLanahan, and even Gaudin, than it is to Kungys. Not only does this case raise the

question of whether the trial judge or the jury should consider the question of materiality, but, as

discussed below, it also involves a defendant's (Seventh Amendment) constitutional right to be

tried before a jury. Thus, this Court finds that Kungys neither requires a general distinction

between how the issue of materiality is handled in civil cases and criminal cases, nor does it lead

the Court to conclude that TSC Industries, McLanahan, and Gaudin are inapplicable to the case

at bar.[12]


In light of the foregoing, this Court finds that although Gaudin was decided in the context

of a criminal prosecution, the Supreme Court's statements concerning materiality and mixed

questions of fact and law in this case (as well as its statements in TSC Industries and

McLanahan) provide guidance for appropriate civil, as well as criminal, actions.  In regard to the

---

[12] To further support its argument that Gaudin is inapplicable to civil cases, Plaintiff cites
to Hervey v. Estes, 65 F.3d 784 (9th Cir. 1995) and United States v. First Dakota National Bank,
963 F. Supp. 855 (D. S.D. 1997), aff'd 137 F.3d 1077 (8th Cir. 1998).  The Court believes that
these cases do not support Plaintiff's argument.

Although Hervey did hold Gaudin to be inapplicable to the mixed law and fact question
with which it was presented, Hervey's holding was made in regard to a claim of qualified
immunity.  Questions of qualified immunity are often treated as preliminary questions that,
though possessing factual elements, are to be decided by courts.  See Hunter v. Bryant, 502 U.S.
224, 228 (1991) ("Immunity ordinarily should be decided by the court long before trial.").
Further, and as Defendant correctly observes, "Hervey must be considered in the light of Fecht,
decided during the same time frame, in which the Ninth Circuit did apply Gaudin and held that
materiality should be determined by the jury."  Defendant's Response at 9 n.6 (citing Fecht v.
Price Co., 70 F.3d 1078, 1080-81 (9th Cir. 1995)).  Although Plaintiff tries to distinguish Fecht
as falling within a "long line of securities fraud cases" which, following TSC Industries, "has
stood for the general proposition that materiality in the securities fraud context is a matter for the
jury," Plaintiff's Reply at 8 n.6, Plaintiff has failed to identify why "materiality in the securities
fraud context" constitutes a special or exceptional context.  Nothing in the Supreme Court's
general analysis of materiality in TSC Industries requires such a limited interpretation, nor would
such a limited view of TSC Industries be consistent with the Supreme Court's citation to that case
in Gaudin.

In First Dakota, the district court granted the defendants's motion for judgment
notwithstanding the verdict after trial, ruling that, as a matter of law, the existence of an IRS
audit was not material to the defendant's acquisition of a bank.  First Dakota, 963 F. Supp. at 858.
This holding, however, was premised on the facts before the trial court (i.e., the trial judge found
that no reasonable juror could have found the IRS audit to be material).  By allowing the issue of
materiality to go to the jury in the first place, and by subsequently directing a verdict concerning
materiality based on the facts of the case, the court actually accepted the proposition that the
ultimate issues of materiality should be reserved for the trier of fact, unless a lack of a legally
sufficient evidentiary basis entitles a party to a directed verdict as a matter of law.

case at bar, these cases demonstrate that the issue of materiality should be placed before a civil jury, unless special circumstances require otherwise. Do such "special circumstances" exist in this case? The Court does not believe so.

**C**

**Plaintiff Has Not Identified Any Compelling Policy Reason
for Keeping the Issue of Materiality from a Jury.**

During oral argument, Plaintiff argued that, notwithstanding the Supreme Court's statements concerning mixed questions of fact and law, as a matter of policy misstatements concerning the price of imported merchandise should always be considered "material" for purposes of 19 U.S.C. § 1592(a)(1). According to Plaintiff, even a misstatement of $.01 would be "material" under 19 U.S.C. § 1592(a)(1), insofar as it would have a natural tendency to influence Customs' appraisement of imported merchandise. Thus, Plaintiff argued, because a false representation of value, no matter how small, will <u>always</u> have a natural tendency to influence, or be capable of influencing, Customs' decision-making concerning a determination that it is required to make, <u>Gaudin</u>'s discussion of mixed questions of law and fact is inapplicable.

While, in most circumstances, a reasonable fact-finder might find that a failure to accurately report purchase price is "material" for purposes of 19 U.S.C. § 1592(a)(1), it need not <u>always</u> do so. Even if there is no dispute as to the underlying historical facts of "what decision

Customs was trying to make?" and "what statement was made?",[13] a determination of materiality

under 19 U.S.C. § 1592(a)(1) will still require a decision-maker to draw inferences from these

facts to determine whether certain representations or omissions had "'a natural tendency to

influence, or [were] capable of influencing, the decision of [Customs] in making a determination

required to be made.'" Daewoo, 12 CIT at 894, 696 F. Supp. at 1540 (quoting Rockwell, 10 CIT

at 42, 628 F. Supp. at 210). Cf. TSC Industries, 426 U.S. at 450 & n.12 (analogizing the

"reasonable shareholder" standard in securities litigation to the "reasonable man" standard in

negligence cases and stating that such inquiries are "peculiarly ones for the trier of fact").


The Court does not agree with, and is disturbed by the proposition that, no reasonable

---

[13] Whether or not these historical facts are in dispute does not appear to change the
appropriateness of having a jury decide the issue of materiality. See TSC Industries, 426 U.S. at
450 ("The issue of materiality may be characterized as a mixed question of law and fact,
involving as it does the application of a legal standard to a particular set of facts. In considering
whether summary judgment on the issue is appropriate, we must bear in mind that the underlying
objective facts, which will often be free from dispute, are merely the starting point for the
ultimate determination of materiality. The determination requires delicate assessments of the
inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of
those inferences to him, and these assessments are peculiarly ones for the trier of fact. Only if
the established omissions are 'so obviously important to an investor, that reasonable minds
cannot differ on the question of materiality' is the ultimate issue of materiality appropriately
resolved 'as a matter of law' by summary judgment.") (quoting Johns Hopkins Univ. v. Hutton,
422 F.2d 1124, 1129 (4th Cir. 1970)) (footnotes omitted) (emphasis added). But see United
States v. Klausner, 80 F.3d 55, 60 (2nd Cir. 1996) (distinguishing Gaudin in the context of a
criminal conviction for tax evasion and fraud on the grounds that, unlike the situation in Gaudin,
factual determinations as to "what statement was made" and "what decision the agency [was]
trying to make" were not in dispute.). The Second Circuit's approach in Klausner for deciding
whether the issue of materiality should be submitted to a jury has been expressly rejected by the
Ninth and Eleventh Circuits. See Uchimura, 125 F.3d at 1286 n.6 (rejecting Klausner and stating
that "[c]ase-by-case determinations of whether materiality is a question of law or fact are clearly
foreclosed by Gaudin"); United States v. Neder, 136 F.3d 1459, 1464-65 (11th Cir. 1998), aff'd
in part and rev'd in part, 110 S. Ct. 1827 (1999); see also United States v. McGuire, 79 F.3d
1396, 1400-01 (5th Cir. 1996) (materiality of defendant's false tax information should have been
submitted to jury), rev'd on other grounds on reh'g in banc, 99 F.3d 671 (1996); accord United
States v. DiRico, 78 F.3d 732, 735-36 (1st Cir. 1996).

jury could find a de minimis misstatement of $.01 to be immaterial under 19 U.S.C. § 1592(a)(1). A jury could reasonably conclude that, although the misstatement was both "false" and "negligent," it had no practical capacity to influence a decision concerning the assessment of import duties, the collection of import figures, an assessment of GSP eligibility, or any other determination that Customs is required to make. Similarly, in the case at bar, Defendant has indicated that, at trial, it will introduce expert testimony to the effect that the Defendant's alleged price overstatements could not even have had the potential to affect Customs' administration of the GSP. See Defendant's Response at 14-15. Such evidence, if credible, could well lead a reasonable jury to find that Defendant's alleged overstatements of price were not "material" in regard to this program.[14] Cf. Uchimura, 125 F.3d at 1285 (holding, in regard to 26 U.S.C. § 7206(1) (filing of materially false tax returns), that "just because a jury usually would agree with such a statement [that any failure to report income is material] does not mean that a jury must agree with it, as a matter of law").

Furthermore, the interpretation proposed by Plaintiff would eviscerate the materiality element of 19 U.S.C. § 1592(a)(1), insofar as it applied to misstatements of value. According to Plaintiff, the fact that Congress has charged Customs with collecting import statistics based on the declared value of merchandise demonstrates that the import price of merchandise is always material. Had Congress desired such a per se rule, it could have easily written the statute to reflect this fact. That Congress did not do so, however, further indicates that the question of materiality is fact-dependent, even when allegedly false statements of value are at issue.

---

[14] The Court references Defendant's proposed expert testimony only by way of illustration, and does not address the issue of whether Plaintiff would have been entitled to partial summary judgment had such a motion been properly presented.

In short, Plaintiff's policy argument does not require the Court to depart from the general standards laid down in <u>TSC Industries</u>, <u>McLanahan</u> and <u>Gaudin</u>, and treat the issue of materiality in this case as a matter of law for the Court to decide.[15] While misstatements of value will often be highly material on their face, the Court is loath to create a <u>per se</u> rule that such misstatements are material in <u>every</u> case. Rather, and in accordance with the standards stated above, it is more appropriate to present to the jury the initial question of whether a misstatement of value is "material" under 19 U.S.C. § 1592(a)(1). Only upon an appropriate and properly supported motion for summary judgment or a directed verdict, addressed to the particular facts at issue, should the Court remove this determination "as a matter of law" from the provenance of the jury.

**D**

**Seventh Amendment Policy Favors Having a Jury, and Not
The Court, Decide the Issue of Materiality in This Case.**

In light of the foregoing, the Supreme Court's analysis of mixed law and fact questions in

---

[15] Nor, does it appear, that any other policy concern requires such an outcome. Although, as discussed above, the Supreme Court has indicated that mixed questions of law and fact have "typically" been resolved by juries, <u>Gaudin</u>, 515 U.S. at 512, in his concurrence Chief Justice Rehnquist made clear that there are "other mixed questions of law and fact [which] remain the proper domain of the trial court," <u>Id.</u> at 525, and listed as such "other" mixed questions "[p]reliminary questions in a trial regarding the admissibility of evidence, the competency of witnesses, the voluntariness of confessions, the legality of searches and seizures, and the propriety of venue." <u>Id.</u> at 525-26 (citations omitted).

By its plain language, § 1592(a)(1) itself makes clear that the question of materiality, like those of "negligence," "fraud" and whether Defendant's representations were "false," is an essential element the government must demonstrate in order to prevail under § 1592(a)(1). Thus, the Court is unaware of (and Plaintiff has not identified) any policy concerns, such as shielding the jury from unreliable evidence, that would lead it to take this question away from the jury.

Gaudin, TSC Industries, and McLanahan appears to affirmatively resolve the question of whether the materiality determination under 19 U.S.C. § 1592(a)(1) should be submitted to a civil jury in the first instance. It is also important to note, however, that allowing a jury to decide the issue of materiality under 19 U.S.C. § 1592(a)(1) is consistent with, and supported by, the long-line of Seventh Amendment cases which have sought to preserve a defendant's right to a jury trial in applicable civil contexts.

The Seventh Amendment preserves a defendant's right to a jury trial of all "[s]uits at common law," including enforcement actions brought by the government (as in the present case) for civil penalties. Tull v. United States, 481 U.S. 412 (1987). In accordance with this right, it has been long accepted that "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." Dimick v. Schiedt, 293 U.S. 474, 486 (1935); see also Byrd v. Blue Ridge Rural Electric Coop., 356 U.S. 525, 537 (1958) ("An essential characteristic of [the federal judicial] system is the manner in which, in civil common-law actions, it distributes trial functions between judge and jury and, under the influence -- if not the command -- of the Seventh Amendment, assigns the decisions of disputed questions of fact to the jury.") (footnote omitted). Consistent with these admonishments, the Supreme Court has construed the Seventh Amendment's right to jury trial liberally, recognizing the prominence of this right in a wide-range of contexts. See, e.g., Ross v. Bernhard, 396 U.S. 531 (1970) (finding a right to jury trial in a shareholder's derivative suit, a type of action traditionally brought in courts of equity, because the plaintiff's case presented legal issues of breach of contract and negligence); Simler v. Conner, 372 U.S. 221, 222 (1963) ("[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions."); Beacon Theaters v. Westover, 359 U.S. 500 (1959) (holding that only

under imperative circumstances can a defendant's 7th Amendment right to jury trial be lost through prior determination of equitable claims).

In light of this precedent, the Court finds that this strong "federal policy favoring jury decisions of disputed fact questions," Byrd, 356 U.S. at 538, further favors having a jury determine the issue of materiality in this case. There appears to be no debate that the Seventh Amendment gives Defendant a right to a jury trial with respect to its liability under 19 U.S.C. § 1592(a)(1).[16] In Tull, the Supreme Court made clear that a civil penalty suit brought by the government is analogous to a common law "action in debt," for which the Seventh Amendment preserves a defendant's right to a jury trial, 481 U.S. at 418-19 ("Actions by the Government to recover civil penalties under statutory provisions therefore historically have been viewed as one type of action in debt requiring trial by jury."). Given this right, and in consideration of the Supreme Court's repeated warning that "any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care," Dimick, 293 U.S. at 486, the Court finds that the policy foundations of the Seventh Amendment strongly support jury determinations of mixed questions of law and fact, such as the question of materiality under § 1592(a)(1).[17]

_____

[16] Although the parties dispute whether Defendant has a right to have a jury determine an appropriate penalty (if necessary), the government conceded during oral argument that Defendant has a Seventh Amendment right to have a jury determine his liability under 19 U.S.C. § 1592(a)(1).

[17] Although the Seventh Amendment may not specifically provide Defendant with a right to have the materiality of his representations decided by a jury (partaking, as it does, of a mixed question of fact and law), a determination of whether Defendant's representations were "material" entails the same analysis as that required to determine whether Defendant's statements were "false" or whether Defendant's actions were "negligent." As does much of the common law, these determinations call upon a decision-maker to draw inferences and make conclusions based upon a set of facts (which may or may not be in dispute) and upon a specific legal standard (the role of courts is to provide that standard). Given the similar analytical basis, reasonable inference implies similar treatment.

**IV**

**CONCLUSION**

For the foregoing reasons, the Court finds (a) that the question of whether Defendant's allegedly false representations were "material" is a mixed question of law and fact which, in accordance with TSC Industries, McLanahan and Gaudin, should be decided by the trier of fact; and (b) that having a jury decide the issue of materiality under 19 U.S.C. § 1592(a)(1) is consistent with Defendant's Seventh Amendment right to have a jury decide disputed factual questions. Accordingly, the Court denies Plaintiff's Motion In Limine.

_____

Evan J. Wallach, Judge

Dated:         October 8, 1999
               New York, New York

# ERRATA

United States of America v. Tri-state Hospital Supply Corp., Court No. 97-04-00678, Slip Op. 99-107, dated October 8, 1999

- On p. 1, delete the bracketed caption "[Defendant's Motion In Limine Denied]"

  Replace the bracketed caption with the following:  "[Plaintiff's Motion In Limine Denied]"

- On p. 1, delete the paragraphs that currently read:

  Akin, Gump, Strauss, Hauer & Feld, L.L.P. (John M. Dowd and Joseph P. Esposito, P.C.) for Plaintiff.

  David Ogden, Acting Assistant Attorney General; David M. Cohen, Director; U.S. Department of Justice, Civil Division, Commercial Litigation Branch (Michele D. Lynch and Lucius B. Lau); A. David Lafer, Senior Trial Attorney, for Defendant.

  Replace these paragraphs with the following:

  David Ogden, Acting Assistant Attorney General; David M. Cohen, Director; U.S. Department of Justice, Civil Division, Commercial Litigation Branch (Michele D. Lynch and Lucius B. Lau); A. David Lafer, Senior Trial Attorney, for Plaintiff.

  Akin, Gump, Strauss, Hauer & Feld, L.L.P. (John M. Dowd and Joseph P. Esposito, P.C.) for Defendant.